## George Sheldon v. Josiah L. Hawes.

*Alteration in written instrument: When to be explained.* Where there are circumstances and appearances rendering an alteration in a written document suspicious, the party relying upon the document, as altered, is bound to explain it before he can recover.

*Handwriting: Inspection by court.* Where there was evidence introduced to show in whose handwriting a certain interlineation was made, and there was no evidence showing, or tending to show it to be in the handwriting of the defendant, it was held incompetent for the court, upon its own unaided inspection, and contrary to the testimony, to find it to have been written by him.

*Re-hearing: When should be allowed.* Where the only positive testimony in his own behalf came from the complainant, and after the hearing, a re-hearing was asked upon a showing of newly discovered evidence that complainant had made statements contradicting his evidence in the material points, in such a way as to be decisive of the case, the refusal of such re-hearing was held erroneous. Complainants' denial of the truth of the newly discovered evidence should not be regarded upon such an application.

*Heard July 8th and 9th. Decided July 11th.*

Appeal in Chancery from Kalamazoo Circuit.

This was a bill to foreclose a mortgage given to secure the payment of a note.

The defense was a material alteration in the note.

A decree was rendered in favor of complainant, and a petition for re-hearing was filed, but denied.

The facts are stated in the opinion.

*Balch, Smiley & Balch,* for defendant.

1. The burden of proof rests upon the party who alleges the alteration of a note as a defense. There seems to be a conflict of authority upon the subject, but the best considered cases hold the burden to be upon the defendant. The following cases are cited to sustain this view.—
2 *Me.* 147; 13 *Id.* 386; 7 *Shepley* (*Me.*) 337; 1 *Halst.* 215; 6 *Wheat.* 481; 20 *Vt.* 205; 5 *Har. & J.* 36; 11 *Conn.* 531; 7 *Jones' Law* (*N. C.*) 455; 12 *Rich. Law* (*S. C.*) 387; 7 *Clarke* (*Iowa*) 143; 2 *Johns. Cas.* 198; 1 *Cowen and Hill's*

*Notes, Phil. Ev.* 606 (*4th Am. Ed.*); 16 *Sergt. & Rawle*, 47; *Best on Presump.* 58.

The distinction sometimes made as to negotiable paper, can not be made here, as this note was not made negotiable.

The reason of this rule seems to be that to adopt a different rule would be to presume the plaintiff guilty of a fraud or crime, which would violate one of the strongest presumptions of the law; the presumption of innocence. It appears by the evidence that the complainant was complained against and discharged for making the alleged alteration. Would this court presume him guilty of a crime of which he has been acquitted upon an examination in a court of justice?

The presumption of fact is naturally in favor of the fairness and innocence of the alteration. — 1 *Wait's Law and Practice,* 913; 20 *Vt.* 205.

Especially, and with great force, ought this principle to prevail in a new country like this, or as this was when these papers were executed, and when the papers are drawn by the parties themselves; but even if the *onus. probandi* rests upon the complainant, he is only bound to prove the signature of the defendant, which establishes *prima facie* that the defendant signed it as it appears, and shifts the burden upon him to show that he did not. — 2 *Bosw.* 352.

*J. L. Hawes,* in person.

1. Where an alteration is material and apparently suspicious, it is incumbent on the complainant to explain it.— 6 *Cush.* 34, 22; *Eng. L. & Eq.* 208; 7 *Bar. S. C.* 564; 8 *Id.* 514; 9 *Cow.* 125; 3 *Ohio,* 445; 9 *Bar.* 186; 19 *Penn.* 178; 1 *Greenl. Ev.* 564–5; 2 *Id.* 160; 2 *Pars. on Con.* 716; 8 *Ad. & E.* 215; 11 *N. H.* 395.

2. The alteration in such a case is presumed to have been made after signing, and by the holder or person to be benefitted by it. — 35 *N. H.* 351; 9 *S. & M.* 375; 9

*Wend.* 555; 2 *Rich. Eq.* 49; 11 *N. H.* 395; 13 *Id.* 385; 2 *Pars. on Con.* 721; *Chit. on Bills,* 624.

2. It is not competent for the court or jury to institute a comparison even between writings properly in evidence, except in corroboration of other testimony. The comparison made by the Circuit Judge was unauthorized, there being no evidence or pretense that defendant wrote the alteration, but proof that he did not write it. — 5 *A. & E.* 514, 703; 4 *Carr. & P.* 267; 9 *Cow.* 100, 112; 13 *Johns.* 238, 97; 2 *Phil. Ev. C. & H. N.* 611, *note* 483.

3. The decision of the Circuit Judge being founded entirely on inspection and comparison of writings, uncorroborated by any evidence, was erroneous, and a re-hearing should therefore have been granted. The petition for such re-hearing was regular, and stated reasons which would constitute a good cause for a new trial at common law. — *Dan. Ch. Pr.* 1232, 1615, *note;* 2 *Wood & Minot,* 168; 4 *Wend.* 639; 2 *Johns. Ch.* 488; 14 *Id.* 481.

By the English practice, one re-hearing was a matter of course, when the application was sanctioned by two counsel. — *Dan. Ch. Pr.* 1620, 1624; 1 *Bar. Ch. Pr.* 356. Under our practice, after decree a re-hearing rests in the sound discretion of the court, and is not a matter of course. — *Rule* 81, *Dan. Ch. Pr.* 1625; 1 *Hopk.* 112; 1 *Story C. C.* 198; 4 *Id.* 173.

The grounds upon which a party may appeal from a decree or order, or apply to have it re-heard, are as numerous and various as the cases themselves. Whenever a question of law or fact is determined, the decisions may be the subject of re-hearing or appeal by any party who conceives himself aggrieved. — 3 *Dan. Ch. Pr.* 1606. Those grounds in this case were,

*a.* The decision of the Circuit Judge, and order thereon, was contrary to law and evidence.

*b.* The newly discovered evidence was material and pertinent to the issue, and such as to deny a party the

benefit of, especially in view of the opinion filed by the Circuit Judge, would be an act of the grossest injustice, and the denial of a sacred right, which the defendant had not waived by any act, or forfeited by any latches. — 2 *Wend.* 225; 4 *Id.* 579; 1 *Johns. Ch.* 494, 502.

CAMPBELL J.

The bill in this case was filed to foreclose a mortgage, given to secure a note made by defendant to plaintiff. The defense rested upon an alleged alteration of the note, whereby it was made payable with ten per cent. interest. The note was originally drawn and signed without any such clause, and the question was whether the words in the margin, "*at ten pr. ct.*," were inserted before the delivery, or were added after the papers went into complainant's possession, without defendant's assent.

The only positive testimony attempting to fix the time and circumstances of the alteration was given by the complainant, who swore the words were inserted after the signing, and before the delivery, by one E. B. Bassett, the subscribing witness, with the assent of defendant. This the defendant denies. Bassett can not speak positively to the handwriting, and has no recollection whatever of the facts, but thinks it probable that he wrote the words. The remaining testimony was all the opinion of witnesses upon the handwriting and other indications appearing on the face of the paper.

The words alleged to have been interpolated are in a different ink from the rest of the note, and are not written in the manner usually to be expected in such papers. The alteration being so peculiar in appearance, and being favorable to the complainant, by adding three per cent. to the interest, creates sufficient ground of doubt to require some explanation. And unless upon a review of the whole testimony it produces a belief in the genuineness of the instrument as altered, of course complainant could not claim to recover upon it.

The court below sustained the bill, but, as set forth in a petition for re-hearing, upon the hypothesis that defendant himself made the alteration. As there was no evidence to that effect, and as there was positive evidence to the contrary, we think it was not competent to act upon any such hypothesis from a mere inspection and comparison of documents. Shortly after the decision was rendered and a computation ordered, and before the case was ready for decree, defendant presented a petition to open the case for a re-hearing on newly discovered evidence, of which defendant was first informed a few days after the decision was rendered. This testimony was set forth in the affidavit of one John E. Babbitt, who states in substance that complainant was in January, 1860, examined before deponent as a magistrate upon the charge of forging the alteration in the note in controversy, upon which Bassett swore that from the fact of his being a subscribing witness he thought he might have written the words inserted; that the decision being postponed until the next day, complainant called in early in the morning and was informed he would be discharged, and the entry was made upon the docket; that he still remained in the office, appearing troubled and as if he wanted to say something, whereupon Babbitt, as they were alone, said to him, "now this matter is ended, and I have discharged you, I should like to have you tell me all about how this alteration came in the note." Sheldon then went on to state that Bassett was mistaken about it, and did not write the words and figures on the note. He further, in answer to questions, said that Hawes, the defendant, did not write it, but refused to say who did, although giving Babbitt to understand he knew all about it.

The court refused to open the case on this showing. We think this was wrong, and that the evidence should have been taken. Sheldon's denial of the truth of Babbitt's affidavit, is not entitled to any weight on such an

application. This testimony was offered for the very purpose of disproving his previous statements as a witness, and to allow a witness to exclude contradictory testimony by denying its truth, would lead to very absurd results. The claim that defendant had been guilty of laches in not obtaining it before, is met by conclusive proof that Babbitt never disclosed it until after he heard of the decision, and it can not be presumed that defendant could have surmised what had been kept secret from every one. And although he previously obtained leave to examine this witness, yet that can have no bearing upon this new discovery. Nor is the testimony merely cumulative in any proper sense of the term. It is the only positive testimony which has come to light in the whole record, except that of the interested parties, and, if true, it would entirely overthrow the case sworn to by the complainant. We think justice required that testimony of this kind should be secured, and that the cause should have been opened for that purpose.

We do not think the case, as presented by the other testimony in the cause, is by any means satisfactorily made out, in such a way that we should feel at all confident that we could fully see through the mystery in which it is involved. We therefore prefer reversing the decree on the ground already mentioned, and opening the case to further light, instead of deciding it upon the imperfect proofs now in.

The decree must be reversed, with costs, and the order of reference must be vacated, and the proofs must be opened to allow the examination of Mr. Babbitt, and the case must be remitted to the Circuit Court for further proceedings. Proofs to be taken upon the usual notice, and to be closed within forty days from the filing of remittitur, unless otherwise ordered by the Circuit Court.

COOLEY and CHRISTIANCY JJ. concurred.

MARTIN Ch. J. did not sit in this case.