## Charles H. Comstock, Administrator, etc., v. Medora E. Smith.

*Deed: Evidence: Alteration: Erasure.* It is not competent to exclude a deed as evidence upon the ground that a portion of it appe..rs to have been written over an erasure; the appearance of the instrument is a fact to be considered by the jury in connection with the explanatory evidence as to the erasure and interlineation, in determining whether the instrument itself is genuine.

*Estate of deceased person: Claimant: Deed: Erasure: Burden of proof.* Where a claimant against the estate of a decedent relies, as the basis of his recovery, upon a clause in a deed, which is claimed to have been written over an erasure, the burden of proving the genuineness of such clause is upon him; and in such case there is no presumption of law that the clause in question was seasonably or unseasonably made, which can change this burden of proof, but the question is one of fact, bound up in the issue, and to be judged of by the jury on the evidence.

*Charge to the jury: Written instrument: Alteration.* A charge to the jury, which, after stating that every alteration on the face of a written instrument detracts from its credit and renders it suspicious when the truth of the alteration is attacked, concludes that, "if the plaintiff has failed to explain this appearance in the deed to the satisfaction of the jury, so as to remove the suspicion, they are to take this into consideration as *evidence tending to show* that the deed in its present form is not genuine," is erroneous.

*Charge to the jury.* A charge to the jury which is ambiguous and inconsistent, is erroneous.

*Deed: Alteration: Delivery.* The question of the genuineness of such an alteration in a deed is a distinct and separate one from that of the acceptance of the deed as an instrument of conveyance.

*Estate of deceased person: Deed: Delivery: Estoppel.* The estate of a deceased person is precluded, by circumstances which have worked an estoppel against the decedent himself in his lifetime, from denying the delivery and acceptance of a deed of conveyance.

COMSTOCK v. SMITH.

*Deed: Delivery: Acceptance: Estoppel.* Where the grantee named in a conveyance, has bargained for the property and paid something down towards the purchase, and has executed a mortgage for a part of the purchase price, with covenants of warranty, and delivered the same to the scriveners who held the deed, and has taken and held possession for some time of the lands conveyed, he is estopped to deny a delivery and acceptance of the deed.

*Covenant to pay mortgage: Personal disability of mortgagor.* One who has purchased lands, and, as part of the purchase price, has covenanted to pay a mortgage given by his grantor, cannot avoid his liability on such covenant by showing that the mortgage was not enforceable against such grantor, by reason of a personal disability to execute a valid and binding mortgage.

*Probate court: Claims against estates: Issue on appeal: Pleadings.* There are no technical rules regulating the form for exhibiting claims in the probate court, or for framing issues for their trial on appeal; substance is more regarded than form, and the simpler the statement the better, if sufficient to apprise the court and parties interested, of the real claim; where, therefore, the petition in the probate court for the allowance of a claim against an estate, and that which stands as the declaration in framing the issue on appeal, clearly point to the same transaction and demand, the objection that they do not set forth the same identical cause of action, is untenable.

*Pleadings: Evidence.* It is not essential that either of these papers should assert that the evidence of the claim was in writing; and the want of such a statement in the petition to the probate court would not exclude the written evidence; nor would the failure to give such evidence in that court be taken as proof that the litigation in the two courts was upon different claims.

*Evidence: Deed.* The failure to introduce in evidence in the probate court, a deed which, when afterwards introduced on the trial of the appeal in the circuit court, was attacked as having been altered since its execution, would have a bearing upon the question of its genuineness.

*Objection: Exception: Assignment of error.* An objection to the admission of evidence, which fails to state any ground for the objection, and where the bill of exceptions does not disclose either that it was ruled upon, or that the ruling, if made, was excepted to, will not support an assignment of error.

*Covenant to pay a mortgage: Subsequent value of land: Evidence.* The right to recover upon a covenant by the grantee in a deed, to pay a mortgage given by his grantor, is not affected by the subsequent value of the land, or by the fact that an oil well upon the land was afterwards abandoned as unprofitable; evidence of these facts would be irrelevant, and should be excluded, in an action to establish a claim against the estate of such grantee.

*Heard October 11 and 15. Decided January 8.*

Error to Lenawee Circuit.

*A. L. Millard* and *C. I. Walker,* for plaintiff in error.

*Robinson & Brooks* and *Andrew Howell,* for defendant in error.

GRAVES, J.

This controversy relates to the same purchase which

gave rise to the litigation between these parties, reported in *20 Mich., 338;* but the demand now in question is a different one. *a*

The "claim" advanced on this record was set up in the probate court as a contingent one, and was there rejected. The claimant, Mrs. Smith, appealed to the circuit court, and upon an issue made up in that court, and tried before a jury, a verdict was rendered establishing her right.

The case is now brought to this court by the administrator, who alleges numerous errors.　It is believed, however, that many of the questions which were learnedly discussed by counsel, and which, by themselves, would require very serious attention, will be found to disappear when the exigencies of the case are fully understood.

In the probate court the claim was preferred by a petition, sworn to on the 15th of December, 1868.　This petition set up a sale by Mrs. Smith, on the 25th of January, 1866, to decedent and one Darius C. Jackson, of certain oil land, an oil well thereon, and machinery, and some personal property, all in Canada, for seven thousand six hundred dollars as the purchase price, of which two thousand dollars was to be paid down; two thousand, in six, twelve, and eighteen months, secured by mortgage on the land; and the remaining three thousand six hundred dollars, to be paid "to one John Decow, the original owner of the said land and premises, and from whom the said Medora E.

---

NOTE *a.*—It may be well to explain, that the name of Mrs. Smith's grantor, and the person to whom she mortgaged, was variously written in the former record, and that it was suggested on the hearing of that case, that the true name was "DeCau." Following that suggestion, the name was so written throughout the opinion then given.

In the present record the name of the same person is invariably written "Decow," and, as it seems right to follow the record where it is uniform, this latter orthography will now be pursued.

Smith purchased the same, by paying and taking up thirty-six different promissory notes of one hundred dollars each, made by the said Medora E. Smith and John N. Smith, her husband, jointly, and payable to the said John Decow."

The petition further stated that the property was conveyed pursuant to the agreement; that decedent and Jackson paid fifteen hundred dollars of the two thousand dollars required to be paid down; that they gave the mortgage for two thousand dollars, as agreed, and, during the lifetime of Comstock, paid thirteen of the Decow notes, and that nothing further had been paid.

The petition also stated that the Decow notes were all dated September 25, 1865, and gave the times for their maturing, from which it appeared that several, claimed to be unpaid, had fallen due, and that several others had not matured.   It was not stated that the claim was founded upon any writing, and none was offered in evidence in the probate court.

In order to form an issue in the circuit court, the claimant filed a declaration containing special allegations, and the common money counts, but not averring an agree·ment *in writing,* and the plaintiff in error filed a plea of the general issue in the statutory form, and added thereto a special notice, in which he stated that he "would insist, and give in evidence under the general issue, that the contract in the declaration mentioned (if any such there was), was a contract for the sale of land, and that there was no note or memorandum thereof in writing, signed by decedent, or by either of the other parties to the contract, or by any person authorized."

It does not appear that the plaintiff in error, on or before pleading on his side to make up the issue, raised

any objection that the cause of action, as represented in the declaration, differed from that set up in the probate court.

This preliminary view is believed to be sufficient for our present purpose.

In taking up the points to be examined, it will be most convenient to depart from the order in which they are placed in the printed record.

On the trial in the circuit court, the defendant in error based her claim exclusively upon a clause appearing in the deed made by herself and husband to decedent and Darius C. Jackson, and which reads as follows: "And the said parties of the third part shall have quiet possession of the said land, free from all incumbrances, with the exception of a mortgage thereon from the parties of the first and second parts to one John Decow, upon which there is due at this time, three thousand six hundred dollars, *which sum is to be deducted from the consideration hereinbefore mentioned, and paid by the parties of the third part to the said mortgagee.*"

Several closely allied questions, relating to this deed, and especially to this clause, were raised by plaintiff in error, and among them there was one group of questions connected with an objection that the deed itself was never accepted by the decedent and Jackson, the grantees named in it; and another group of questions connected with an objection that the closing part of the clause just recited, and being that part of it which asserts that the three thousand six hundred dollars was to be deducted from the consideration and paid by Comstock and Jackson, was written over an erasure, and was an unwarranted alteration.

These questions can be more distinctly and satisfactorily disposed of, if the heads to which they belong are distin-

guished and examined separately, and in following this course the matters connected with the objection last mentioned, will be first considered. Those matters as exhibited by the record relate, *first*, to the action of the court in admitting the instrument to be read as evidence to the jury, and, *second*, to the charge and refusals respecting the disputed passage.

The deed was allowed to be read to the jury against an objection that the concluding paragraph of the clause before quoted, appeared to have been written on an erasure, and this objection is still urged. The other grounds of objection to the admissibility of the deed, so far as they are still insisted on and deserve attention, will be sufficiently noticed in another connection.

The objection now under consideration, proceeds upon the assumption that the alleged infirmity was apparent, that being so, it was incumbent upon the claimant primarily to give evidence to the court to remove a presumption which the law raised against the rectitude of the paper, before the instrument could become competent evidence, and that this preliminary proof was not adduced. It is not possible to say upon this record, that it was apparent that a portion of the clause was written upon an erasure, but conceding that it was, the objection is still susceptible of two answers: *First*, this objection did not relate to matters of mere incidental or formal proof, or to any distinction between primary and secondary evidence, but it implied that the court, under the guise of passing upon the admission of evidence, might, in substance, take the trial of a main fact from the jury and decide it upon a preliminary inquiry.

The authenticity of the special clause in the deed was a direct and vital issue of fact which the jury, under appropriate instructions, were entitled and required to decide according to their opinion of the evidence bearing upon it,

and as the writing itself, as it actually appeared, was a very material and pertinent part of that evidence, the judge was not at liberty to exclude it upon any opinion of his own, either that it was spurious, or that evidence tendered to the court in explanation of unfavorable appearances, was inadequate, without taking for granted, or prejudging the very point in dispute, and invading the province of the jury.

And, in the *second* place, the defendant in error did actually adduce explanatory evidence to the court in advance of the admission of the paper to the jury. The witness, Fisher, was examined at great length before the deed was submitted, and he testified that he was one of the subscribing witnesses, that he drew the deed, and that the controverted clause was in his handwriting and was put in before execution. If it were admitted, therefore, that the suspected passage was only admissible to the jury after evidence to the court to explain away the ground of suspicion, it seems very manifest that the requirement on the subject, as construed by the authorities which sustain it, was fully complied with.

We are to consider next the rulings of the court in giving the law to the jury on this branch of the case, and in the outset, it will be observed, that while its acceptance by decedent and Jackson, was denied, there was still no dispute that the deed itself, as an instrument of conveyance, was duly signed and acknowledged by the claimant and her husband; and one phase of the controversy appears to have been whether, supposing the deed as a mere conveyance, to have been accepted, the disputed clause ever received the express or implied assent of decedent. The investigation of this question, as one not wholly excluded by a theory that the clause was inserted, either before the deed was accepted, or even before it was signed, gave rise to several minor questions looking to its solution,

and the charges given in relation thereto, at the instance of the plaintiff in error, were certainly quite as favorable for him as the case permitted.

Passing these instructions, we reach the rulings complained of.

The plaintiff in error maintains that the court erred in refusing his requests, and in the charge given touching the burden of proof and the legal presumption raised on the appearance of the instrument. The requests so refused were the eighth and ninth of those preferred by the estate, and the charge given adopted the eighth request of the claimant, with a modification and addition.

It has been stated already that we cannot learn from the record, whether it was apparent that a portion of the clause in question was written upon an erasure, or indicated an alteration. If the fact was apparent in the sense of being discoverable by critical inspection, it was not apparent, it would seem, in a sense which superseded inquiry or forbade dispute. Because, the plaintiff in error produced experts, and examined them at great length on the very subject, and one of these experts, who was a learned and practical microscopist, testified that he had inspected the disputed paragraph under an instrument which magnified four hundred and ninety times. Whatever the appearances were, they bore upon the main question,—the question of the genuineness of the writing. If they indicated that the writing was a second cast, this was a circumstance of more or less weight, if taken by itself, against the genuineness of the clause. It was still a circumstance, however, capable in its nature of being so interpreted by other appearances and indications of the paper or surrounding facts, as to be consistent with the rectitude of the writing.

We come now to the charge given in response to the

26 MICH.—40.

eighth request of the claimant, and it appears to be open to several objections.

Taken as a whole, it is not free from ambiguity; and it also seems, in part at least, to have proceeded upon a wrong hypothesis. If correctly understood, a portion of it was designed to inform the jury, that it would be presumed, in the absence of proof, that the disputed passage was seasonably made, and known and consented to by decedent and Jackson, and that it would rest upon the administrator to impeach it. This portion of the instruction was not framed upon the theory that evidence, which the jury might conclude to discredit, had been given, of the time or manner of the alleged alteration, but on the theory of the want of evidence altogether on that subject. And still the record discloses that a large amount of evidence bearing on this point, was produced on each side.

Again, the addition made by the court does not appear to fall in with the rest of the charge, and in itself appears to be wanting in accuracy. It first states, as a settled proposition, that every alteration on the face of a written instrument, detracts from its credit and renders it suspicious, when the truth of the alteration is attacked. It then declares in substance, that the estate claimed that the specified clause was a fraudulent alteration, and winds up with this observation: "And if the plaintiff (the claimant) has failed to explain this appearance in the deed to the satisfaction of the jury, so as to remove the suspicion, they are to take this into consideration, as evidence tending to show that the deed in its present form is not genuine."

This charge is certainly subject to be understood as meaning, and may have been considered by the jury as meaning, that even after all the facts were submitted, and they were insufficient to satisfy the jury that the writing

was genuine, still, that the failure of the claimant to satisfy them on that point, would go no further than to *tend or conduce* to show that the writing was spurious. No reasoning, of course, is required to demonstrate, that if upon the whole evidence bearing on the question, the genuineness of the writing was, after all, not established, in the opinion of the jury, the case of the claimant was, as an inevitable consequence, already defeated, and the right of the estate to a verdict completely established, and that the cause of that consequence could not thus be made to shrink to a mere circumstance tending only to conduct to the result.

But the charges given and refused on this branch of the case, require us to consider upon which party the burden of proof was cast to show the genuineness of the writing, and to decide whether either party was entitled to the aid of a presumption of law which must be quite, if not wholly, decisive of the controversy.

We repeat that the proceeding had for its object the establishment of a demand against the estate, and that the claimant brought forward and relied on the clause in the deed, as the exclusive basis of recovery. She thereby in substance averred and maintained that the clause was genuine. The administrator contended that it was spurious. An issue was thus presented for the jury, upon which the case hinged, and the claimant held the affirmative of that issue. Each side submitted evidence upon it; but, as the claimant held the affirmative, and made the document her witness, the burden of proof was upon her, and she was not entitled to recover, unless, upon the whole case, and after making due allowance for the proof given by the estate, and all evidence in the case, from whatever source, favoring it, the evidence preponderated in favor of the genuineness of the controverted writing. All will admit that

such would have been the rule if the cause had been an ordinary suit to recover upon a written instrument whose authenticity was the subject of dispute; and no reason is perceived for holding the principle inapplicable here. The general doctrine was clearly recognized in *Sheldon v. Hawes, 15 Mich., 519.*

But assuming this to be the rule upon the general question of the burden of proof, it may still be insisted that a presumption of law came in aid of the claimant, and referred the alleged erasure, if shown, and also the insertion of what was written upon it, to a time prior to the signing of the deed.

The cases bearing upon this point are greatly at variance, and there is no possibility of reconciling them. Even when the circumstances have been so far similar as to warrant the application of the same rule, dissimilar views have been advanced and maintained with great strength of reasoning. Names eminent in jurisprudence stand opposed, and arguments which command respect lead to opposite results. The most that can be done in the present instance, is to proceed upon that ground which appears to be most consistent and plain, and the most likely to effectuate justice.

As before stated, it was incumbent on the claimant to establish the genuineness of the paper, and if she failed, the estate was entitled to the verdict.

The fate of the particular issue depended largely, if not wholly, upon whether the controverted writing was placed in the deed before or after its execution, and if the law presumed that it was placed there before, then by its introduction in evidence a *prima facie* case was made for the claimant on this point, without the aid of any explanatory or assistant evidence whatever, either from the appearance of the document or otherwise, and the burden of proof

was practically cast upon the estate.    To admit the pre-
sumption, therefore, in this case, would involve the admission
of a consequence at variance with the relations of the par
ties to the issue, and to each other as litigants in the actual
controversy.    And in my judgment there was no presump-
tion of law that the writing was seasonably or unseasonably
made, but a question of fact bound up in the issue, and to
be judged of by the jury on the evidence.—*Ely v. Ely, 6
Gray, 439.*

The evidence bearing on it was laid before the jury, and
the constituents of that evidence, and what deductions were
authorized, as well as their extent and force, and the strin-
gency of admissible inferences, presented matters for their
consideration and decision.    They had the document before
them just as it then appeared, and they had a large amount
of evidence of different kinds and from various sources,
bearing upon its authenticity, and it was their province and
their duty to take the whole, including the appearance of
the paper, and analyze and weigh it, and make such rea-
sonable deductions and inferences as their knowledge of the
laws of human conduct, and their experience and observa-
tion, taught and approved.

This appears to me to be the view required by the case,
and if correct, it necessitates a new trial.    This conclusion,
however, will hardly exclude the necessity of noticing other
questions to which allusion has been made, and which
received the attention of counsel, since it is quite possible
that they may otherwise arise hereafter to embarrass the case.

Among these, there was: *first,* a class of questions
connected with the objection by the plaintiff in error, that
the deed from the claimant and her husband to decedent
and Jackson, had never been delivered; and *second,* a class
of questions connected with the objection of plaintiff in
error, that the estate was not liable, because, as was alleged,

Mrs. Smith, as a married woman and contractor in Canada, was not bound by her notes and mortgage to Decow, and was under no legal liability on account of her promise to pay him for the property she had bought of him and had sold to decedent and Jackson.

The questions in neither of these classes will require to be separately considered, for the reason that the application of certain principles will meet and dispose of the whole body in each class. We need only distinguish between the classes.

And *first,* as to the group concerning the delivery of the deed. Now, imputed errors are only entitled to be examined on a theory which makes them material, and these questions can be of no practical importance whatever in this case, except upon the supposition that the controverted clause is found to be authentic. Because, if that is found to be spurious, the claimant's ground of action is thereby defeated, even though the deed, as an instrument of conveyance, is ascertained to have been well delivered. The present inquiry may, therefore, proceed upon the assumption that the clause in question was not interpolated.

In looking at the subject of the delivery of the deed, as it comes up in this record, we have to see, first of all, whether upon the evidence the decedent was in a situation to deny his acceptance of the deed as an instrument of conveyance, and if he was not, he was certainly disabled from denying the implicated fact of delivery, and if he was precluded, the estate is.

Bearing in mind, then, the continuance of the distinction between an inquiry concerning the genuineness of the disputed clause, and the inquiry concerning the acceptance of the deed as an instrument of conveyance by decedent, it recurs to inquire whether the decedent was in a position in which he could say that he had not accepted the deed, as a conveyance of the property.

This question, it appears to me, is answered by con
·ceded circumstances, and facts which forbid controversy.
It is not questioned or open to dispute, but that the decedent and Jackson concluded a verbal bargain for the Canada property, and paid something down towards the purchase; that the claimant and her husband made and
acknowledged the deed as a conveyance, and left it with the
scriveners, and after the reception of the mortgage conducted themselves as though the deed had been delivered;
that the decedent and Jackson, with their wives, gave the
mortgage, running to Mrs. Smith, upon the land, for two
thousand dollars of the purchase price, and recognized it
as an incumbrance on the land, and that for a considerable period after they sent the executed mortgage to the
scriveners who held the deed, they held possession and
enjoyed the land, as purchasers from the claimant.    Moreover, a judgment of the circuit court, establishing a claim
in favor of Mrs. Smith against the estate, upon this very
mortgage, was affirmed by this court in *20 Mich., 338.*

The decedent and Jackson covenanted in this mortgage,
that they had a good title, in fee simple, to the lands
described in the deed, and that they had good right to
convey to the claimant.    They, therefore, conducted themselves as though they had received the deed, and were in
the position of mortgagors to the claimant, for part of the
consideration, and moreover, had solemnly covenanted by
the mortgage, that they were owners.

I think that, in view of these circumstances, the estate
is precluded from saying that the deed, which was the only
thing to supply the interest to be mortgaged, had not been
accepted as an instrument of conveyance.—*Barber v. Harris,
15 Wend., 616; Loomis v. Stuyvesant, 10 Paige, 490; Bush
v. Marshall, 6 How., 284; Thorp v. The Keokuk Coal Company of the City of N. Y., 48 N. Y., 253; Van Rensselaer*

*v. Kearney, 11 How., 322; Bush v. Person, 18 How., 82; Truman v. McCollum, 20 Wis., 360; Wanzer v. Blanchard, 3 Mich., 11; Barker v. Cleveland, 19 Mich., 230; Farmers & Mechanics Bank v. Bronson, 14 Mich., 361.* Assuming this position to be correct, it follows that there is no room for claiming on the part of the estate, that there was no delivery of the deed as a paper to pass the title, and it also follows that the issue here open to the estate was not upon that, but upon the validity of the disputed passage which was found in the deed.

The *second* class of questions, and being those relating to the liability of Mrs. Smith upon the notes and mortgage to Decow, next demand attention.

The position of the plaintiff in error on this subject is, that Mrs. Smith being a married woman, and the land being in Canada, and her notes and mortgage to Decow having been made there, her engagements to him were not and are not enforceable against her, on account of her alleged disability, and that her immunity from legal liability, though of a personal nature, completely invalidates her claim against the estate, as based on the disputed clause in the deed. It is not proposed to enter into the merits of this proposition, because it is quite unnecessary. There is no ground for claiming that the questions which have been agitated on this branch of the case, were entitled to be introduced into the controversy, except upon the theory that the disputed passage in the deed was genuine. Because, as already stated, if that clause was not genuine, the claimant's case was baseless, and further objections were needless. It is, therefore, proper, in approaching this class of questions, to assume that the paragraph found in the deed and relied on by the claimant, was genuine; and making this assumption, we find that the deed conveying the land, and which decedent and Jackson accepted, contained the provision that the land

was purchased subject to the Decow mortgage of three thousand six hundred dollars, and that the grantees, decedent and Jackson, were to pay it to Mrs. Smith as part of the purchase price; and if this was the position of the parties, then, both decedent and Jackson were, and the estate of the former is, precluded from raising the objection of Mrs. Smith's want of liability to Decow, founded upon her disability as a married woman.

On the case supposed, the decedent and Jackson obtained the conveyance on the specified consideration, and assumed the payment to Mrs. Smith, of the Decow mortgage, as part of that consideration, and it is not admissible for the estate when called on by her to pay, to answer by saying, "It is true, that the property was obtained from you on an undertaking to pay you the agreed price, but we are exonerated from paying three or four thousand dollars of it, because you are not in law bound to pay as you promised to your grantor, although you may be ready and willing to do so."—*Hill v. Robbins, 22 Mich., 475; Mann v. Eckford's Ex'rs., 15 Wend., 502; Freeman v. Auld, 44 N. Y., 50; Hartley v. Harrison, 24 N. Y., 170; Murray v. Judson, 5 Seld., 73; Sands v. Church, 2 Seld., 347; Remsen v. Graves, 41 N. Y., 471; Wells v. Chapman, 4 Sand. C. R., 312; People's Savings Bk. v. Collins, 27 Conn., 142; West Winsted Savings Bk. & Building Ass. v. Ford, id., 282; Lord v. Sill, 23 Conn., 319; Shawhan v. Long, 26 Iowa, 488; Bowman v. Taylor, 2 Adol. & Ell., 278; Lainson v. Tremere, 1 Adol. & Ell., 792; Horton v. Westminster Improvement Com'rs., 14 E. L. & E., 378; Disbrow v. Jones, Harrington, 48, 56, 57.*

Considering the case, then, upon the only theory which would make this class of questions material, they are perceived to be excluded by it, and the main subject of contention is still the validity of the clause in the deed.

26 MICH.—41.

Leaving this part of the case, the administrator objects, that the claim presented in the probate court, and that sought to be established on appeal, are not identical; and the grounds of this objection appear to be: *first*, that neither the statement of the claim, nor the evidence in its support in the probate court, indicated that it was founded upon a writing, or upon any thing contained in a sealed instrument; and *second*, that the terms of the engagement, as set forth in the court below, did not correspond, in substance and legal effect, with the terms as stated in the probate court. This point is believed to be untenable. As stated heretofore, we discover nothing in the record to show that the plaintiff in error, before pleading, or even before the trial in the circuit court, suggested that there was any variance between the declaration and the petition, in the description of the terms óf the claimant's demand. But as there are reasons for insisting that the point is jurisdictional, and was not the subject of waiver, it will be considered as turning upon other grounds.

There are no technical rules which regulate the form for exhibiting claims in the probate court, or for framing issues for their trial on appeal, and it is not desirable that there should be. Substance is more regarded than form in such cases, and the simpler the statement the better, if sufficient to apprise the court and parties interested, of the real claim. The highly artificial rules of common-law pleading have no proper application, and it must frequently occur that the forms of declarations in actions *ex contractu* cannot be conveniently employed at all. The true subject of dispute should clearly appear, and where this is the case, the form is of little consequence.

The petition in the probate court, and the special portion of what was meant as a declaration in the court below, most clearly pointed to the same transaction and demand, and not

to different ones. It is true, that neither of these papers asserted that the evidence of the claim was in writing, and it was not necessary that they should, to enable it to be passed upon, and the want of such a statement in the petition cannot be regarded as proving that the demand in controversy in the probate court was different from that litigated on the appeal. Under the petition, the claimant was entitled to introduce written evidence, and if she failed to give it, that circumstance is not to be taken as proof that the litigation in the two courts was upon different claims.

The evidence, indeed, on the trial in the circuit court, differed from that given in the probate court, and, in so far as the failure to exhibit in the latter, the disputed passage in the deed, ought, under all the circumstances, to bear upon the question of its genuineness, it should receive attention. But I am unable to see that the failure to show the deed on the trial in the probate court should be allowed to influence the litigation in the circuit court in any other direction.

The plaintiff in error again objects that the notes from Mrs. Smith to Decow, which were given in evidence, varied from the description in the declaration. It is unnecessary to go into this question, because, as there must be a new trial, the claimant will be in a situation to amend, and thus obviate it, and we are unwilling to discuss questions which can be readily seen to have only a speculative value.

The remaining points insisted on by the plaintiff in error relate to rulings on the admission of evidence.

The first is grounded upon certain testimony given by Decow. The claimant having asked this witness whether he had had any conversation with decedent and Jackson about paying these notes given by her, and having replied that he had had such conversation with decedent, was then asked to state where it occurred. As the point made by

the plaintiff in error, rests upon what immediately followed this inquiry, it is best, perhaps, to quote the exact terms of the bill of exceptions on the subject:

"*Answer.*—It was in front of the stable, at my stable at Oil Springs; I asked him how the well yielded. [Objected to.] He said that it yielded well."

The plaintiff in error now insists that this testimony was immaterial and incompetent, and calculated to prejudice the jury. But we observe that no ground of objection was stated in the court below, and that the bill of exceptions neither mentions that it was ruled upon, or that the ruling was excepted to, if made. This part of the record will therefore support no assignment of error.—*Turner v. Grand Rapids, 20 Mich., 390; Pennock v. Dialogue, 2 Pet., 1; Atkins v. Elwell, 45 N. Y., 753; Bain v. Whitehaven, etc., R. W. Co., 3 H. Lords, 1, 15, 16; Levin v. Russell, 42 N. Y., 251; Hill v. Robinson, 23 Mich., 24.*

The last point is presented by the ninth and tenth assignments of error.

It rests upon the exclusion of two items of evidence offered by the plaintiff in error: *First*, he offered to show that at the time of the trial in the circuit court, the Canadian property was absolutely worthless, and the court ruled it out, and, as I think, correctly. I am unable to see that such evidence was pertinent to the issue; *second*, the court overruled his offer to show that the sons of decedent and Jackson, and for whose benefit the Canada property seems to have been purchased, abandoned the oil well which was part of it, late in the fall of 1866, because it did not yield enough to pay the expenses of running, and could not be made to do so. I discover no error in this ruling. The evidence offered had no relevancy to the issue, and was rightly excluded.

This disposes of all the questions which were urged on

the hearing, and the view taken leads to an opinion that several points calculated to embarrass the case were not entitled to be introduced.

The final result is, that, for the misdirection to the jury, the judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.