HUGH MCGREGOR WILSON v. THE ESTATE OF ADELINE C. HOTCHKISS, DECEASED.

*Alterations in written instrument—Evidence—Reputation for solvency and insolvency.*

1. Where alterations in a written instrument appear upon their face to be suspicious, explanatory testimony must be given before the instrument is admissible in evidence; but, if no suspicion is raised from such inspection, the alteration is presumed to have been made prior to the execution of the instrument.

2. Alterations are suspicious, upon the face of an instrument, when they appear to be beneficial to the person claiming rights under it.

3. After an instrument is admitted in evidence, the question whether alterations or erasures were made before or after its execution is one of fact for the jury.

4. Notes claimed to have been given for borrowed money were filed as claims against an estate, and their allowance was resisted on the theory that they were given without consideration, it being claimed that the deceased was worth $40,000, and had no need to borrow money, while the claimant was insolvent; and it is held that it was proper to inquire into all of the circumstances which would have a tendency to prove either that the deceased had borrowed money from the claimant, or that she was not such borrower; and, while the reputation of either for solvency or insolvency would not prove the fact, it would have some bearing upon the probability of the claimant loaning the deceased large sums of money.

Error to Wayne. (Reilly, J.) Argued May 2, 1890. Decided June 6, 1890.

Appeal from disallowance of claim by commissioners on claims. Judgment of circuit court, affirming decision of commissioners, reversed, and a new trial ordered. The facts are stated in the opinion.

*Henry M. Cheever* and *Jasper C. Gates,* for appellant and claimant, contended:

1. So far as we have been able to find, the only cases where general reputation for solvency has been received were where the issue was whether a preferred creditor or a grantor of a debtor had reason to believe him to be insolvent; citing 1 Greenl. Ev. § 101, and notes and cases cited; and see *Bank v. Buck,* 56 Mich. 394; *VanNess v. Hadsell,* 54 Id. 560, 563.

2. In the absence of any evidence tending to show that the alterations were fraudulent, the mere introduction of these notes in evidence, and the proof of the genuineness of decedent's signatures thereto, made a case entitling claimant to a verdict.

3. On the question of the presumption as to time of making alterations or erasures, counsel cited *Munroe v. Eastman,* 31 Mich. 283, 285; *Sirrine v. Briggs,* Id. 443, 445; *Willett v. Shepard,* 34 Id. 106; *Brand v. Johnrowe,* 60 Id. 210, 212.

4. The court below, instead of entering an order disallowing the claim, gave a common-law judgment against claimant. This was error; citing *Daly's Appeal,* 47 Mich. 443, 445, 446; *Tyler v. Estate of Gallop,* 68 Id. 185, 187.

*Frazer, Barbour & Rexford (Leroy C. Parker,* of counsel), for estate, contended:

1. The evidence of reputation was sufficient of itself to establish the fact of insolvency, and was competent; citing *Angell v. Rosenbury,* 12 Mich. 241.

2. Comments on the evidence by the judge in his charge are not subject to exceptions. They are not binding upon the jury, nor understood to be so; citing *Carver v. Jackson,* 4 Pet. 1; *People v. Vane,* 12 Wend. 78; *People v. White,* 14 Id. 116; *Gardner v. Barden,* 34 N. Y. 433.

CHAMPLIN, C. J. Adeline C. Hotchkiss died testate at Detroit, Mich., and Hugh McGregor Wilson presented to the commissioners on claims his claims against the estate, consisting of open accounts and promissory notes

aggregating about $40,000. The commissioners disallowed these claims; and he appealed to the Wayne circuit court, where a trial was had before a jury, who found by their verdict that Wilson had no cause of action. Claimant brings error. The errors assigned are to the rulings of the trial court in the admission of testimony, and the charge, and refusals to charge, of the court. There were no issues framed in the circuit, but the parties went to trial upon the claims as presented to the commissioners. We have, therefore, no way of determining what the issues were upon the trial save from the theories of the respective parties, presented in their briefs. The testimony was not all returned.

The open account presented as a claim against the estate consisted of items of cash paid from October 28, 1886, to and including May 14, 1887, aggregating, without interest, $1,427.06. As presented, credits were deducted amounting to $160. The balance of the claim was made up of eight promissory notes, which, with their indorsements thereon, read as follows:

"$1,000.00.                    DETROIT, August 5, 1879.
"Four months after date I promise to pay to the order of H. McG. Wilson one thousand dollars, at Michigan Savings Bank, value received, with interest at ten per cent. per annum.          ADELINE C. HOTCHKISS."

Indorsed on back as follows:

"August, 1883, house rent, $90.00. January 13, 1884, mortgage, Wayne, $65.00. April 7, 1885, by cash, $30.00. April 16, 1887, cash, $100.00."

"$1,270.                      DETROIT, Oct. 25, 1880.
"One year after date I promise to pay to the order of H. McG. Wilson twelve hundred and seventy dollars, at ———, value received, with interest at the rate of seven per cent. per annum.          A. C. HOTCHKISS."

Indorsed on back as follows:

"April 7, 1885, by cash, $50.00, fifty dollars."

"$18,000.                    DETROIT, July 31, 1881.

"Six months after date I promise to pay to the order of H. McG. Wilson, eighteen thousand dollars, at ———, value received, with interest at the rate of ten per cent. per annum.                    A. C. HOTCHKISS."

Indorsed on the back as follows:

"May, 1882, by cash, $120.00. Dec. 22, by cash, $70.00; cash on horse, $120.00. April 7, 1885, by cash, $100.00, one hundred dollars. Sept. 15, by cash, $50.00, fifty dollars. April 16, '87, cash, 100.00."

$2,550.00.                    DETROIT, May 19, 1882.

"One year after date I promise to pay to the order of H. McG. Wilson, M. D., two thousand five hundred and fifty dollars, at Michigan Savings Bank, value received, with interest at ten per cent. per an.
                    "ADELINE C. HOTCHKISS."

Indorsed on back as follows:

"May, 1885, received on note one hundred dollars.
                    "H. McG. WILSON."

"$1,970.75.          DETROIT, MICHIGAN, Sept. 20, 1884.

"One year after date I promise to pay to the order of H. McG. Wilson, M. D., one thousand nine hundred and seventy 75-100 dollars, at Michigan Savings Bank, Detroit, Michigan, value received, with interest.
                    "ADELINE C. HOTCHKISS."

"$500.          DETROIT, MICH., November 8, 1884.

"Six months after date I promise to pay to the order of H. McG. Wilson, M. D., five hundred dollars, at Michigan Savings Bank, Detroit, value received, with use.
                    "ADELINE C. HOTCHKISS."

"$1,900.                    DETROIT, October 23, 1886.

"One year after date I promise to pay to the order of H. McG. Wilson, M. D., one thousand nine hundred dollars, at Wayne County Savings Bank, value received, with interest at the rate of ten per cent. per annum.
                    "A. C. HOTCHKISS."

"$———.          DETROIT, MICH., October, 25, 1886.

"One year after date I promise to pay to the order of H. McG. Wilson, M. D., one thousand nine hundred and seventy-eight dollars, at Wayne County Savings Bank, value received, with interest at ten per cent. from date.
                    "A. C. HOTCHKISS."

There was no contention in the circuit court that the signatures of Mrs. Hotchkiss to each of the notes were not genuine. Neither was there anything upon the face of four of the notes that was at all suspicious. But the other four, namely, the note dated July 31, 1881, for $18,000; the note dated September 20, 1884, for $1,970.75; the note dated October 23, 1886, for $1,900; and the note dated October 25, 1886, for $1,978,—were suspicious upon their face.

It was claimed—and the appearances of the notes, the originals of which have been submitted to our inspection, tend to bear out such claim—that the note for $18,000 has been altered (1) in the date; (2) in the amount as indicated by the figures in the left-hand upper corner, these indicating that it at first expressed $18.00, and afterwards, with different ink, a cipher was inserted between the figure "8" and the two ciphers, so that it reads now "$18,000." The body of the note, however, in stating the amount as "eighteen thousand dollars," affords not the least evidence of suspicion. The person who wrote the amount in the body of the note, when he crossed the letter "t" in "eighteen," continued, without lifting his pen, to write the letter "t" in the word "thousand." It developed upon the trial that July 31, 1881, was Sunday; and testimony was given that it was made and delivered upon Saturday, July 30. The consideration of this note was also made a question.

Is was claimed that each of the other three notes were originally written for $1,000, and that the excess of that amount was written in the notes after they were signed. There was enough difference in the handwriting and ink to cast suspicion upon the genuineness of each of these notes. It seems to have been so considered by counsel for claimant, as he introduced testimony tending to

explain the appearance of each of said four notes, and to prove their genuineness.  The record states that the—

"Defendant introduced evidence tending to show that all the notes offered in evidence were without consideration as between the parties, and plaintiff offered evidence that they were given for a consideration."

In *Sheldon v. Hawes*, 15 Mich. 519, the words "ten pr. ct." were claimed to have been interpolated in a promissory note after it was made and delivered.  Mr. Justice CAMPBELL, speaking for the Court, said:

" The words alleged to have been interpolated are in a different ink from the rest of the note, and are not written in the manner usually to be expected in such papers.  The alteration, being so peculiar in appearance, and being favorable to the complainant by adding three per cent. to the interest, creates sufficient ground of doubt to require some explanation.  And unless, upon a review of the whole testimony, it produces a belief in the genuineness of the instrument as altered, of course complainant could not claim to recover upon it."

In *Comstock v. Smith*, 26 Mich. 315, a claim was made against the estate of a deceased person, and was based upon a covenant contained in a deed which, it was claimed, appeared to have been altered.  The Court said:

"The proceeding had for its object the establishment of a demand against the estate, and the claimant brought forward and relied on the clause in the deed as the exclusive basis of recovery.  She thereby, in substance, averred and maintained that the clause was genuine. The administrator contended that it was spurious.  An issue was thus presented for the jury, upon which the case hinged, and the claimant held the affirmative of that issue."

And upon the authority of *Ely v. Ely*, 6 Gray, 439, the learned Judge who delivered the opinion said:

"In my judgment, there was no presumption of law that the writing was seasonably or unseasonably made, but a question of fact bound up in the issue, and to be

judged of by the jury on the evidence," who were to "make such reasonable deductions and inferences as their knowledge of the laws of human conduct, and their experience and observation, taught and approved."

In *Willett v. Shepard*, 34 Mich. 107, it was held that the burden of proof was upon the plaintiff to show that the note, when made and delivered, was in the same condition as when declared on in the suit, and it was incumbent on him, in every stage, to maintain his side of that issue by a preponderance of evidence. See, also, *Manistee Nat'l Bank v. Seymour*, 64 Mich. 72. The distinction is made between instruments in which the alterations, interpolations, or erasures appear upon their face to be suspicious, and those in which no suspicion is raised from inspection. In the latter case the alteration is presumed to have been made before execution. In the former, explanatory testimony must be given before they are admissible in evidence. Alterations, interpolations, or erasures are suspicious, upon the face of the instruments when they appear to be beneficial to the person or party claiming rights under them. After they are admitted in evidence, whether the alteration or interpolation was made before or after execution becomes a question of fact for the jury.

Upon the trial of the cause the court permitted, against the objection of the plaintiff's counsel, testimony to be introduced showing that, in divorce proceedings brought by the wife of the claimant after some of the notes in question were given, as he claims, he made affidavit, in opposition to a petition for alimony, that at that date, August 21, 1883, he had no property, real or personal, or of any description, and to the same effect upon a later date, when another proceeding was instituted by his wife against him for divorce; also testimony tending to show the general reputation, both at Detroit and Lockport, N.

Y., before he left there, was that he was insolvent; also testimony tending to show that Mrs. Hotchkiss was generally reputed to be worth $40,000; also testimony showing that, during Mrs. Hotchkiss' last sickness, he came frequently to Mrs. Hotchkiss' house, but did not attend her professionally, and the morning after she died searched the house for a will, and told the witness, who was the nurse, that, when it was found, it would be found that she had left everything to him, and that he owned what was in the houses on Lafayette avenue; also permitted the records in the probate office in the matter of the estate of Adeline C. Hotchkiss to be read in evidence, and also the bank-books belonging to deceased; and error is assigned upon the admission of this testimony in the first, second, third, fifth, sixth, and seventh assignments.

We cannot say that this testimony was not relevant, in the absence of definite issues framed in the circuit court, to establish the theory of counsel representing the estate, which appears to have been that, as to four of the notes, they had been altered by interpolating therein additional amounts to be paid, and as to all of them, as well as the open account, there was no consideration; that, as bearing upon that theory, the claimant was insolvent, and had no money to lend, and Mrs. Hotchkiss was a lady of large and ready means, and had no need to borrow money at large rates of interest; that his remark to the nurse was inconsistent with a claim that he was a creditor to so large an amount, and also as bearing upon his supposed influence over her. It was proper to inquire into all circumstances which would have a tendency to prove either that Mrs. Hotchkiss had borrowed money from the claimant, and owed him otherwise, or that she was not a borrower from him, and did not owe him either on settlement of their Lockport matters or for claims which arose since they came to Detroit. The reputation of either for

solvency or insolvency would not prove the fact, but it would have some bearing upon the probability of the person reputed to be insolvent loaning large sums of money to a person reputed to be worth $40,000, and having a respectable bank account to draw against.

The fourth assignment of error is based upon the error in permitting the following question to be put to the witness Reade, who was the nurse:

"Whether, during her last sickness, Mrs. Hotchkiss wanted to see Dr. Wilson or not?"

The error, if one existed, was harmless, as the witness answered:

"Sometimes she did, and sometimes she did not."

The circuit judge charged the jury as follows:

"With reference to the first demand, you must believe from the evidence in this case that those items going to make up this demand, and which Dr. Wilson claims amount to $1,400, and which the estate claims that his testimony only shows between $900 and $1,000 of legal claims against Mrs. Hotchkiss' estate, that they were paid by Dr. Wilson, by Mrs. Hotchkiss' directions, with his own money."

Counsel for claimant not only insists that this charge is erroneous as given, but that the court erred in refusing to give his ninth request to charge, which was as follows:

"Plaintiff is entitled to recover for the money paid by him for the use and benefit of Mrs. Hotchkiss with her knowledge and consent, which, you will find from the evidence, was paid according to the vouchers he has offered in evidence."

This charge was not given, and nowhere in his charge does the court refer to this portion of Dr. Wilson's claim again. We think the charge as requested should have been given, and that the charge as given was erroneous. We cannot understand how a claim of nearly $1,400, but

which the attorneys for the estate claim the doctor's own testimony only shows to be a legal claim of $900 or $1,000, could be utterly rejected by the jury. They either must have found that they were not paid, by Mrs. Hotchkiss' directons, with his own money, or some testimony was given in the case which the learned judge did not call the attention of the jury to. They should have been instructed that, if paid without her directions, but for her use and benefit, and she had knowledge of it, and assented to it, she would be as fully liable as if she had directed it.

The remaining assignments of error, based upon the charge as given, may be considered together. Generally, they complain of the manner of presenting the case to the jury, and particularly in calling the attention of the jury to the testimony of certain witnesses and asking, "Is this probable?" without declaring his own opinion in words, whether it was probable or not,—which, of course, it would be improper to do. While it may be permissible in the trial judge, in cases where the jury are to draw inferences one way or the other from certain facts which they find established, to call the attention of the jury to testimony tending to establish such facts, leaving it to them exclusively to find whether the testimony established such facts, and to draw their own inferences therefrom, yet it is not proper to do so in such a way as to throw discredit, or to leave the jury to believe that the judge discredits such witnesses or their testimony. The credit to which any witness is entitled with the jury is exclusively for them, and they are to judge of the probabilities arising from the circumstances disclosed by the testimony. We are not possessed, from the record before us, of enough of the testimony of the witnesses referred to, to say whether the circuit judge exceeded the bounds of propriety or not. He left it to the jury to

say whether the statements made by the witnesses were probable, and told them that, if they believed their testimony, the notes were valid claims against the estate.

For the errors noted with reference to the charge as given, and refusal to charge concerning the account, the judgment must be reversed, and a new trial granted.

The other Justices concurred.