JERSEY *v.* JERSEY.

1. WILLS—INTERLINEATIONS—PRESUMPTIONS.
    Interlineations of the words "death" and "signed in the presence of" in a will, in no way affecting the disposition of the property, will be presumed to have been made before the will was executed.

2. SAME—PROBATE APPEAL—STATEMENT OF GROUNDS—NECESSITY.
    Under sections 669, 671, 1 Comp. Laws, on appeal from probate court, the appellant is confined to the issues raised by his claim of appeal.

3. SAME—OBJECTIONS NOT MADE BELOW.
    The claim that the probate court was without jurisdiction of a will contest because of the death of the proponent and beneficiary and failure to have an administrator appointed to continue the proceedings, will not be considered when first raised in this court.

4. SAME—LAPSED LEGACY.
    Where there is no provision in the will to the contrary, a legacy vests as of the date of the decedent's death and does not lapse by death of the legatee before probate of the will.

Error to Macomb; Tucker, J. Submitted November 15, 1906. (Docket No. 39.) Decided December 17, 1906.

Sarah M. Jersey presented for probate the last will and testament of Wellington Jersey, deceased. The will was allowed in the probate court, and William W. Jersey and others appealed to the circuit court. There was judgment for proponent on a verdict directed by the court, and contestants bring error. Affirmed.

*Morse & Davis*, for appellants.

*Thorington & McKay* (*Seth W. Knight*, of counsel), for appellee.

OSTRANDER, J. Two questions are presented upon the record—one whether there was any evidence affecting the validity of the will which should have taken the case to the jury; the other whether the estate and interest created by the will had lapsed.

1. As to the first proposition, it is claimed by contestants that there was evidence tending to prove (*a*) that the instrument sought to be probated had been altered after its execution; (*b*) that testator was mentally incompetent; (*c*) that the will was procured by fraud and undue influence.

(*a*) The original will is returned to this court. It is asserted that the word "*death*," in the body of the instrument, and the words "*signed in the presence of*," in the attesting clause, were added after execution. The witnesses were acquaintances of the deceased, and both of them were sworn and gave testimony identifying the signatures as those of testator and of themselves, respectively. Each of them testify positively that on going to testator's house he (testator) said he had invited them in to witness his will; that he signed it in their presence; that they signed it in his presence, and in the presence of each other; that Mr. Jersey declared the instrument to be his will, and that they might read it, but he preferred

they should not; that each of them read enough of it to ascertain that it was a will; that the testator appeared to be of sound mind and uninfluenced in the transaction. It is true that one of the subscribing witnesses is not able to state positively that the words claimed to have been added were in the will when he signed. The fact is of little consequence. The alterations, if they are alterations, are not on their face suspicious, and in no way affect the disposition of property. If the word "*death*" was omitted when the instrument was first prepared, and its position is some indication that it was, the reading would have been "in the event of my before that of my wife." The word "*my*" first occurring is at the end of a line; the word "*before*" at the beginning of the next line. The word "*death*" is placed ahead of the word "*before*" and on the same line, bringing some of the letters to the left of the ruling, which is that of ordinary legal cap paper. The natural inference is that upon reading over the will before it was signed the omission of the word "*death*" was noticed and was supplied, apparently by the same hand, using the same pen and ink. It is not possible to tell from inspection whether the words "*signed in the presence of*" were written by the person who drew the will or made with the same pen. As in case of the word "*death*," they are not suspicious, even though treated as alterations. No one could be benefited or injured by the use or omission of them. The presumption is that they were made before the instrument was executed. *Wilson* v. *Hotchkiss' Estate*, 81 Mich. 172; 1 Underhill on Wills, p. 365. Whether they were or not, the original words of the will are not uncertain, and the probate of the instrument as originally drawn is attended with no difficulty. It is the general rule that alterations made after its execution upon the face of a will, for the purpose of amending its provisions, will not revoke the will as a whole. 2 Am. & Eng. Enc. Law (2d Ed.), p. 265.

(*b, c*) Testator was upwards of 70 years of age and his wife was more than 60 years old. They had been mar-

ried 40 years, and two children, born of the marriage, had died. He conducted a small marble shop in Romeo until some time in November, 1902, when he became ill with a stomach trouble. His last will was executed January 14, 1903, and gives all of his property to his wife. He died February 2, 1903. His property was valued by appraisers at $4,912, including the house, valued at $2,500. The petition for probate of the will was made by the widow on November 26, 1904. She died December 6, 1904. The will was allowed January 3, 1905, and an appeal was taken by a brother of the testator, who alleged the specific reasons: That decedent was mentally incompetent; the execution of the instrument was obtained by undue influence; was not executed according to law; was not the last will of decedent; was not executed by decedent. In the circuit court a verdict for proponents was directed, and later, a motion for a new trial coming on to be heard, the court in denying the motion used this language:

"It appears conclusively from the evidence that the will in question was properly executed, and that the deceased, Wellington Jersey, was at the time of its execution entirely competent mentally to execute it. It appears, further, that he was under no undue influence whatever; nor is there any evidence in the case showing or tending to show that any fraud was committed in connection with the execution of the paper. I do not think there is a scintilla of evidence fairly tending to show either that the deceased was mentally incompetent or that he was unduly influenced in the making of the will."

It is not important to the parties or the profession to set out the testimony at length. A careful examination of the record leads us to the conclusion reached by the court below if we use the term "fraud" in the sense usually given it in such cases. It is contended, however, on the part of contestants, that testimony was introduced which tends to prove that through mistake or fraud the instrument does not express the will of the testator. The claim made is that the wife drew the will at the direction of her husband, the testator, and that he and she both

understood that it gave to her a life interest and estate only. For this reason it is not his will, though executed and witnessed as such. The claim is based upon certain admissions and statements made by the wife during her lifetime to various of contestants' witnesses.

Counsel for proponent insist that no such question was properly before the court below, for the reason that the claim of appeal gives no notice or indication of this ground of attack. The statute (1 Comp. Laws, §§ 669, 671) requires notice of the appeal to be given to the adverse party by appellant, *with his reasons therefor.*

In *Hoban* v. *Piquette*, 52 Mich. 346, 354, opinion was reserved upon the question whether—the sole reason assigned being "that the said will was obtained by undue influence exercised upon said testatrix"—it was competent to disprove testamentary capacity; the point not having been made in the circuit court. We do not find that the point was made in the circuit court in this case or any objection made to the introduction of the testimony. There was a motion made to strike out the testimony as immaterial and incompetent. This motion was not followed by a ruling, although the court, as has been stated, at the close of contestants' proofs, directed a verdict. Assuming that the form of the objection made was not sufficiently explicit to acquaint the court with the real ground of objection as now stated, it is clear that upon a new trial the objection would be open to proponent, and, if it is a good objection, would require the court to exclude the testimony. We are of opinion that the objection is good. *Boynton* v. *Dyer*, 18 Pick. (Mass.) 1. No issues appear to have been framed. The claim that the scrivener and the testator were both mistaken concerning the meaning of the simple words used in this will, or the one that the scrivener was mistaken, or actuated by fraudulent motives, and the testator did not read the will after directing how it should be drawn, are in no way even shadowed forth in the reasons for appealing.

2. The point that the proceedings are irregular and the

probate court was without jurisdiction to proceed, after the death of Sarah M. Jersey, until an administrator of the estate of Wellington Jersey had been appointed, in whose name the proceedings to probate the will could have been continued, does not seem to be open to contestants here.   Nor is there merit in the one that the legacy lapsed by the death of Mrs. Jersey before the will was probated. As to the first proposition, it seems to be advanced here for the first time.   As to the other, we find no evidence of a refused legacy or devise.   The will of decedent speaks from his death, at which time the sole beneficiary was living, and at which time the estate, there being no provision in the will to the contrary, vested.   *Rood* v. *Hovey*, 50 Mich. 395.

No other questions require discussion.

We find no reversible error, and the judgment is affirmed, with costs of this court to proponent.

CARPENTER, C. J., and MONTGOMERY, HOOKER, and MOORE JJ., concurred.