128  171
f152  239

TOMLINSON *v.* CORNETT.

MORTGAGES—ASSIGNMENT—ABSOLUTE SALE.

*The question in this case is one entirely of fact. It is *held,*
under the evidence, that complainant was the absolute pur-
chaser of a note and mortgage, and that they were not
assigned to him as the agent of the mortgagee for the pur-
pose of foreclosure.

Appeal from Jackson; Peck, J. Submitted June 24,
1901. Decided July 19, 1901.

Bill by Joseph B. Tomlinson against George Cornett,
William H. Cornett, Susan Cornett, Leverett C. Adams,
Eugene Pringle and Adolphus E. Hewett, copartners as
Pringle & Hewett, Eugene Pringle, individually, and
Barnabas C. Hatch, for an accounting. From a decree
for complainant, defendants appeal. Reversed.

The controversy in this case arises over the assignment
by defendant George Cornett to complainant of a mort-
gage executed by one Gates to Cornett December 18, 1884,
and held valid in *Gates* v. *Cornett,* 72 Mich. 420 (40 N.
W. 740). On August 25, 1890, Cornett assigned that
mortgage and the note accompanying the same to com-
plainant. Complainant paid him $1,000 in cash, and exe-
cuted two negotiable promissory notes,— one for $2,600,
and the other for $3,800,— due three years from date.
Complainant foreclosed this mortgage by advertisement,
and the sale made thereunder was held void. *Strong* v.
*Tomlinson,* 88 Mich. 112 (50 N. W. 106). Complainant
then proceeded to foreclose in chancery, and obtained a
decree, which was sustained in *Tomlinson* v. *Gates,* 98
Mich. 49 (56 N. W. 1050). A sale was had under the
decree, and complainant realized thereon $6,031, and ob-

*Head-note by GRANT, J.

tained a personal decree against Gates for the deficiency, $2,768.42.

Not long after the assignment, Mr. Cornett left the State, went to Indiana, became a traveling salesman, and for some time traveled under an assumed name. For some reason he desired to conceal his whereabouts, and complainant claims that he did not know where he was until he returned to Michigan in 1898. One Root was the attorney and solicitor for complainant in the foreclosure proceedings. Root then resided in Jackson, but, before this suit was brought, had removed to Chicago. Suit at law was brought against complainant upon the notes. Soon after George Cornett left the State, his brother, the defendant William H. Cornett, was appointed his guardian. The defendant Susan Cornett obtained a judgment of over $5,000 against George Cornett, and garnished complainant. Defendant Adams also brought suit against George, and garnished complainant. The defendants Hewett, Pringle, and Hatch claim interests by assignment from George.

In 1897 complainant filed a bill in chancery against William H. Cornett, as guardian, for an accounting and adjustment between complainant and George Cornett, and praying that he be permitted to assign and transfer his apparent rights in the decree for a deficiency to William H. Cornett, as guardian, and that said William be required to surrender and deliver up said promissory notes, and that the suit at law commenced by said William thereon be perpetually enjoined. That suit was partially heard, but never determined. On his return, George filed a petition to be declared competent, and obtained a decree to that effect. In this condition of affairs, complainant filed this bill on January 26, 1900. The theory of the bill is that complainant was not the purchaser of the mortgage, but acted only as agent of George Cornett in foreclosing and obtaining a decree and sale; that the $1,000 paid at the time of the assignment was a loan; and that the two notes were given upon the agreement that, when com-

plainant had foreclosed, he should then account to George for the moneys obtained from the sale, and that George should then surrender the two notes and repay the $1,000. This was denied by George, who claims that the transfer was an absolute sale. The question is therefore one of fact. The court sustained the complainant, entering a decree for an accounting.

*Parkinson & Campbell*, for complainant.

*John F. Henigan*, for defendants George Cornett and B. C. Hatch.

*Blair & Williams*, for defendants Susan and William H. Cornett.

*Pringle & Hewett*, in pro. per.

GRANT, J. (*after stating the facts*). Mr. Tomlinson and George Cornett were the only two witnesses of what occurred at the time of the assignment, and of any parol agreement. Mr. Tomlinson died after the decree was rendered. He was then 80 years of age. The learned circuit judge, before whom the testimony was taken, refers to the known character and reputation of Mr. Tomlinson for honesty and integrity, and states that "it would be impossible for any judge sitting in Jackson to pass upon his sworn testimony without recognizing that fact." He then refers to the character of George Cornett as illustrated by the proofs in the case, and the litigation involving the mortgage in question and other mortgages. The circuit judge then says:

"Where these two witnesses disagree upon a material question of fact, the disagreement scarcely creates a subject for hesitation or debate in the mind of a court seeking to determine the truth."

He then concludes that where they disagree he must rely upon the testimony of Mr. Tomlinson.

Were this case to be decided upon the testimony of these two witnesses, we might reach the same conclusion,

—not, however, upon what the judge has said about the reputation of either or both. The judge was not a witness; and in chancery cases, which must be determined by this court upon the facts, we cannot consider the statement of the circuit judge as to the reputation or character of either litigant, unless it is based upon the testimony in the case. The circuit judge evidently recognized the difficulty in reconciling Mr. Tomlinson's conduct for six years after this assignment with his present claim, for he says:

"While it may not be easy to reconcile Tomlinson's conduct and testimony in the litigation extending over the period from '90 to '96 with his view of the transaction as sworn to in this case, under all the circumstances surrounding him, and with the explanation afforded by the situation itself, with its strikingly peculiar conditions, I am satisfied that such inconsistencies as exist are not sufficient to compensate for the wide difference in probative force between the testimony of Tomlinson, as given in this case, and that of Cornett; and, notwithstanding the deteriorating effect which these inconsistencies must have upon his testimony here, I still believe that the truth is, in substance, in accordance with Tomlinson's testimony given in this case."

It becomes, therefore, essential to determine what that conduct was. The assignment and the negotiable promissory notes and the payment of $1,000 import, and are consistent only with the theory of, an absolute sale. Complainant admits that the arrangement between him and Cornett was to be kept secret. Soon after this assignment, the firm of Conely, Maybury & Lucking sued George Cornett, and garnished Mr. Tomlinson, upon the theory that he was indebted to, or had property, money, or effects in his hands belonging to, George Cornett. Mr. Tomlinson filed a disclosure absolutely denying any indebtedness whatever, or the possession of any property, moneys, goods, chattels, or effects whatsoever belonging to George Cornett. He was examined under oath, and there testified, in substance, that he was the absolute owner of the mortgage, and that "I paid him [George

Cornett] $1,000 in cash, and the balance in negotiable paper." On the strength of this disclosure, Conely, Maybury & Lucking were compelled to discontinue their suit, and paid Mr. Tomlinson the costs. In his bill for foreclosure Mr. Tomlinson stated under oath "that said note, mortgage, and decree, having been duly sold and assigned, are now owned by your orator." William H. Cornett testified that he asked Mr. Tomlinson "if the transaction was a genuine one, and if there was anything in it in which George had any interest, or anything of that kind, and he said, 'No.' He said that he was the absolute owner of the property that was transferred to him; that he gave George a thousand dollars in money and these two promissory notes, and in consideration of that he received the assignment of the mortgage that had been decreed to him." Complainant admits that he told William that it was a *bona fide* transaction. He claims to have made a written memorandum at the time of the assignment, which was produced in evidence, and reads as follows:

"Agreement between George Cornett, of the first part, and Joseph B. Tomlinson, of the second part, of the city of Jackson, county of Jackson, State of Michigan, in regard to the matter of the Gates mortgage: Said George Cornett, of the first part, agrees to furnish Joseph B. Tomlinson, of the second part, all the money needed to foreclose said mortgage, and for and in consideration of the payment by Joseph B. Tomlinson, of the second part, to George Cornett, of the first part, one thousand dollars in cash in hand paid, and two notes amounting to $6,000 or over, in consideration of which said George Cornett, of the first part, guarantees the collection of said mortgage, with all the costs and interest that may accrue thereon."

That memorandum is consistent alone with the sale, and not with that of agency. His attitude for six years towards every one who had any interest in knowing the facts was that of a *bona fide* purchaser. It is unnecessary to enter further into the testimony. Mr. Tomlinson in his lifetime was, and his estate now is, bound by the record

he then made. He was called upon, by those who had a right to know, to speak and tell the truth of this transaction. He deliberately chose not to do so. He testified that he made these statements upon the theory that he was the absolute owner of this mortgage, the note secured thereby, and the decree, until he had foreclosed, sold the property, and realized thereon, and that then what he had received was not his own, but belonged to George Cornett. The theory is a reflection upon Mr. Tomlinson's intelligence If he was merely the agent for collection for George Cornett, he should, when called upon, have so stated. He knew the facts then as well as he did six years later. Under this record, there are only two possible theories: (1) That the purchase and sale by complainant were absolute; or (2) that the assignment was made to prevent the creditors of George Cornett from getting the benefit of this property. But, whatever may have been the secret understanding between them, Mr. Tomlinson deliberately made his bed, lay in it for six years, and his estate must now continue to lie in it. This disposition of the case renders it unnecessary to discuss the other point raised, viz., whether the assignment and notes constitute a written contract, which cannot be varied by a contemporaneous parol agreement.

Decree reversed and bill dismissed, with costs of both courts.[1]

The other Justices concurred.

---

[1] Subsequently, on motion, a decree was entered under defendants' prayers for affirmative relief, declaring liens for the amounts of their several claims on the purchase-money notes given by complainant.